LONG ISLAND LIGHTING COMPANY, Appellant, *v.* VILLAGE OF NEW HYDE PARK et al., Respondents.

(Argued May 27, 1936; decided July 8, 1936.)

*Stephen Callaghan, Ralph Stout, Philip Huntington* and *George E. Mulry* for appellant.

*David Holman* and *Jacob J. Pincus* for respondents.

Judgment affirmed, with costs; no opinion.

Concur: LEHMAN, O'BRIEN, CROUCH, LOUGHRAN and FINCH, JJ. CRANE, Ch. J., dissents in the following opinion in which HUBBS, J., concurs:

CRANE, Ch. J. (dissenting). The Village Law (Cons. Laws, ch. 64), section 56, provides for the submission of a proposition to establish or require a lighting system. The proposition may be submitted at a village election. The petition for such a proposition must be presented twenty days prior to the annual election unless a special election is called therefor.

In 1933, to meet what is called a public emergency, chapter 782 of the laws of that year was passed to enable villages and other municipalities to get money aid from the Federal government. It recites the passing of the National Industrial Recovery Act " making funds available for the construction of public works." Section 3 reads:

" * * * any municipality, by majority vote of its governing board, * * * are hereby authorized to accept from the federal emergency administration of public works direct grants of moneys paid in defraying the cost of the labor and materials employed upon any project undertaken under the provisions of the National Industrial Recovery Act. The funds received as such grants shall be expended on the project so undertaken in the same manner as other funds made available for such project whether as loans or otherwise.

" § 4. * * * the governing board of any municipality, by majority vote, may authorize the proper officers * * * to enter into contracts with the federal emergency administration of public works * * * to obtain funds pursuant to the provisions of the National Industrial Recovery Act for public works projects * * *. It shall not be necessary for any such board or body to hold hearings on or publish notices of *such projects* or for such projects to be initiated by petition of taxpayers or owners of property nor shall *such project* be subject to referendum, mandatory or permissive * * *.

" § 5. * * * any municipality, by majority vote of its governing board, * * * is hereby authorized to sell its bonds or other obligations to the federal emergency administrator * * *.

"§ 6. All provisions of this act applicable to municipalities and public bodies may also be availed of by and shall be deemed to apply to the state itself in aid of any public works projects undertaken or to be undertaken by any of its departments, boards, commissions or other state agencies. * * *."

Although the phraseology of this act is none too clear, its purpose is quite evident. The object in view was to permit municipalities and the State to borrow money from the Federal government to carry on *authorized* projects. There is nothing in this act which gives authority to any municipality to undertake any particular project. Whatever the municipality desires to undertake according to the power given it by other State legislation may be carried on with governmental aid, but this act does not furnish the authority for the doing of such work. We must look to other laws which give to a village or a county the right to construct water works, electric light plants, railroads, highways and the like. These emergency acts do not create municipal powers other than the right to borrow Federal money.

This act was amended by chapter 104 of the Laws of 1934. Section 3 authorizes municipalities to accept, to borrow money from the United States through the Federal Emergency Administrator of Public Works. Section 4 reads in part: " * * * the governing board of any municipality, by majority vote, may * * * enter into contracts with the United States * * * to obtain funds pursuant to the provisions of the national industrial recovery act for public works projects under the supervision of said municipality or body, providing, however, * * * that, if such public works project is for the construction or operation of a public utility or facility for the supply of gas, electricity or water in competition with or substitution for a public utility or facility supplying gas, electricity or water in the same area, any action of the public body or governing board of a municipality in relation thereto, *pursuant to the provisions of this*

*section*, shall be subject to a mandatory referendum, notwithstanding any other provisions of this act."

Then follow these sentences, upon which the respondents here rely for authority to build electric light plants: " It shall not be necessary for any such board or body to hold hearings on or publish notices of such projects or for such projects to be initiated by petition of taxpayers or owners of property nor shall such project be subject to vote at any election (other than a school district meeting) or to referendum, mandatory or permissive, except as above provided, and except that this provision shall not operate to dispense with a hearing under the general district law and the constitution on the sole question of whether a proposed improvement benefits all the property in a district liable to taxation for defraying all or part of its cost. If before or after the execution of any such contract the governing board shall determine to submit the authorization of the project, or the issuance of bonds or the levying of a tax, to vote at a school district meeting or at an election or to referendum, whether or not required by law, it may, notwithstanding the provisions of any other law, provide for such vote or referendum on notice published at least once in a newspaper circulating in the municipality, and posted in at least ten conspicuous places on any day at least seven days prior to such meeting or election; and no other notice shall be required.  *  *  * "

I cannot believe that the Legislature by any such blind language has passed on to villages and counties the authority to undertake any public enterprise, no matter what it may be, upon simply giving ten days' notice by poster and one publication in a newspaper of a referendum. The " project " must mean the proposal to borrow public moneys from the United States government except that where this is done for the purpose of purchasing electric light plants or establishing them in competition with going concerns a referendum may be had as to whether the money of the United States government shall be taken and used for such a purpose. The

434

Legislature could never have intended, in my judgment, by these confused sentences to pass on to municipalities full and complete authority to inaugurate any kind of public improvement, irrespective of the amount involved, without proper safeguards and sufficient notice to the taxpayers. Section 4-a reads as follows: " Notwithstanding the provisions of any general, special or local law, requiring a project to be undertaken under such law, wholly or partly at the expense of property specially benefited thereby, such project may in the discretion of the governing board or public body, be undertaken as a public works project wholly at the expense of the municipality at large. Notwithstanding the provisions of any general, special or local law requiring that the cost of a stated project or kind of project be borne in whole or in part by assessments on property specially benefited, bonds in an amount to pay the entire estimated cost or part thereof of such a project may be issued in the first instance and prior to the completion of the project or prior to the levy of any such assessments."

And section 6-a reads: " Notwithstanding the provisions of any general, special or local law other than this act, public work projects or any contract referred to in section four of this act, or the issuance of bonds or other obligations pursuant to such contract, or any other acts or proceedings in connection therewith, may be authorized by resolution which may be finally adopted on the same day on which it is introduced by a majority of all the members of the governing board, and such resolution need not be published before becoming effective."

The money thus borrowed from the United States is to be secured by the bonds of the municipality which have to be paid some time, or at least a proportional part thereof.

This general power given to a governing body of a municipality without authorization from or consent of the taxable property owners, who ultimately must have to pay for these so-called projects, surely has some limitation other than ten days' posted notice and the vote of

those who see it. This act, in my judgment, is a very estimable piece of legislation to enable municipalities to finance their public improvements by Federal aid, when those public improvements have been authorized according to the respective charters or municipal law.

Whatever may have been the meaning and intention of the Legislature it is quite clear that it never intended the act to authorize municipalities to construct public utilities. This chapter 104 of the Laws of 1934 became a law March 29, 1934. The Legislature certainly was cognizant of what it had done. We must assume that the members of the Legislature would not pass totally inconsistent measures. Thirty days after this act, the Legislature added a new article (14-A) to the General Municipal Law (Cons. Laws, ch. 24), which became effective April 24, 1934 (Laws of 1934, ch. 281, § 1). Sections 360 to 366 relate specifically to the powers granted to municipal corporations to establish, own and operate certain public utility services. Subdivision 2 of section 360 thereof reads as follows:

" 2. Notwithstanding any general or special law, any municipal corporation may construct, lease, purchase, own, acquire, use and /or operate any public utility service within or without its territorial limits, for the purpose of furnishing to itself or for compensation to its inhabitants, any service similar to that furnished by any public utility company specified in article four of the public service law. For such purpose, any municipal corporation may purchase gas or electrical energy from the state, or from any state agency, or other municipal corporation, or from any private or public corporation."

Subdivisions 3 and 4 are as follows:

" 3. The proposed method of constructing, leasing, purchasing, acquiring, the plant and facilities for such service, together with both the maximum and the estimated costs thereof, the plan for financing such project, and the method of furnishing such service shall be fixed by a local law in the case of a city, or by a village ordinance in the case of a village, or by a resolution of the board of

supervisors in the case of a county, or by a resolution of the town board in the case of a town.

" 4. Authority to enact such a local law for a city is hereby conferred upon the local legislative body of the city as defined in the city home rule law. Authority to enact such an ordinance for a village is hereby conferred upon the board of trustees of the village. Authority to adopt such a resolution for a county is hereby conferred upon the board of supervisors of the county. Authority to adopt such a resolution for a town is hereby conferred upon the town board of the town."

Subdivision 5, in part, reads:

" 5. Any such action by the local legislative body of a city, before taking effect, shall be submitted for the approval of the electors of the city at the next general election or at a special election called for such purpose, in the manner provided by, and in accordance with the provisions of the city home rule law relative to the submission of other local laws required thereby to be submitted in a mandatory referendum. Any such action by the board of supervisors of a county, before taking effect, shall be submitted for the approval of the electors of the county at the next general election in such county held not less than ninety days after the adoption thereof; or at a special election called in the same manner as far as practicable as provided in the election law with respect to special elections called by the governor. Any such action by the board of trustees of a village, before taking effect, shall be submitted for the approval of the electors of the village at the next general election in such village to be held not less than ninety days after the adoption thereof; or at a special election called in the same manner as provided in the village law for the submission of a proposition at a special village election. Such submission shall be in the manner provided by, and in accordance with the provisions of the village law for the submission of any other question by referendum on petition, except that the referendum on the proposition provided for in this section shall be mandatory.  *  *  * "

The other provisions need not be quoted, until we come to section 366, which contains this clause in closing: " In so far as the provisions of this article are inconsistent with the provisions of any other act, general, special, or local, the provisions of this article shall be controlling."

The incorporated village of New Hyde Park never complied with any of these provisions of the General Municipal Law, and has sought to establish an electric light plant under the vague provisions of the emergency law, above quoted. Its action for this purpose is illegal and ineffectual. Article 14-A, to which I have referred, is too complete, rational and detailed to be brushed aside as of no account. It is the last word of the Legislature and consistent with all its other legislation regarding the powers and duties of municipal corporations. The reasonable safeguards and checks which have always surrounded the expenditure of public moneys by governmental agencies are here contained and the taxpayer properly protected from wild extravagance. The Legislature has spoken and we must give effect to this carefully drawn provision regulating and controlling all municipal corporations in establishing electric light service.

Chapter 585 of the Laws of 1935, which later amended chapter 782 of the Laws of 1933, has reference merely to bond issues and in no way bears upon or affects these conclusions.

For the reasons here stated the judgment of the Appellate Division and that of the Trial Term dismissing the complaint should be reversed, and the motion, under rule 106 of the Civil Pract ce Act, for such dismissal, on the ground that the complaint fails to state facts sufficient to constitute a cause of action, should be denied, with costs in all courts.

Judgment affirmed.